McGREGOR W. SCOTT
United States Attorney
CAMIL A. SKIPPER
Assistant U.S. Attorney
501 I Street, Suite 10-100
Sacramento, California 95814
Telephone: (916) 554-2709

FILED
JUL 20 2006
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,           )   CR. S-05-0536 EJG
                                    )
            Plaintiff,              )
                                    )   **ORDER DENYING DEFENDANT'S MOTION**
      v.                            )   **TO SUPPRESS**
                                    )
DANNY VIRAY NAZARENO,               )
                                    )
            Defendant.              )
_____)

For the reasons stated on the record during the June 30, 2006, hearing, the defendant's motion for release pending sentencing is DENIED.

Date  7/18/06

_____
HON. EDWARD J. GARCIA
Senior Judge

1

1       IN THE UNITED STATES DISTRICT COURT

2       FOR THE EASTERN DISTRICT OF CALIFORNIA

3                    ---oOo---

4       BEFORE THE HONORABLE EDWARD J. GARCIA, JUDGE

5                    ---oOo---

6  UNITED STATES OF AMERICA,        )
                                    )
7           Plaintiff,              )
                                    )
8  vs.                              )  No. Cr. S-05-0536
                                    )
9  DANNY VIRAY NAZARENO             )
                                    )
10          Defendant.              )
                                    )
11 _____

12                   ---oOo---

13

14            REPORTER'S TRANSCRIPT

15

16        RULING ON MOTION TO SUPPRESS

17

18            FRIDAY, JUNE 30, 2006

19                   ---oOo---

20

21

22

23

24

25 Reported by:    MICHELLE L. BABBITT, CSR #6357

```
 1                         APPEARANCES

 2

 3     For the Government:

 4
              McGREGOR W. SCOTT
 5            UNITED STATES ATTORNEY
              501 I Street
 6            Sacramento, California  95814
              BY:  MICHELLE RODRIGUEZ
 7                 Assistant U.S. Attorney

 8     For the Defendant:

 9            OFFICE OF THE FEDERAL DEFENDER
              801 K Street, 10th Floor
10            Sacramento, California 95814
              BY:  LEXI NEGIN
11                 Assistant Federal Defender

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

|     |                                                                      |
| --- | -------------------------------------------------------------------- |
| 1   | SACRAMENTO, CALIFORNIA                                               |
| 2   | FRIDAY, JUNE 30, 2006; 10:00 A.M.                                    |
| 3   | ---oOo---                                                            |
| 4   |                                                                      |
| 5   | THE CLERK:  CR S-05-536, United States versus Danny                  |
| 6   | Nazareno.                                                            |
| 7   | MS. RODRIGUEZ:  Michelle Rodriguez for the United                    |
| 8   | States.                                                              |
| 9   | THE COURT:  Ms. Rodriguez.                                           |
| 10  | MS. NEGIN:  Good afternoon, Your Honor.  Lexi Negin on               |
| 11  | behalf of Danny Nazareno.  Mr. Nazareno is present and in            |
| 12  | custody.                                                             |
| 13  | THE COURT:  You're standing in for Ms. Skipper?                      |
| 14  | MS. RODRIGUEZ:  I am.                                                |
| 15  | THE COURT:  This matter is on calendar for the Court's               |
| 16  | decision on defendant's motion to suppress evidence seized           |
| 17  | during a warrantless search of his residence by Sacramento           |
| 18  | County Sheriff Officers on December 5, 2005.                         |
| 19  | The relevant facts surrounding the search have been                  |
| 20  | determined by the Court from exhibits attached to the parties        |
| 21  | brief, declarations submitted by the defendant and the two           |
| 22  | officers who conducted the search and testimony given at an          |
| 23  | evidentiary hearing on the motion.                                   |
| 24  | On November 23, 2005, a suspect entered a Target                     |
| 25  | retail store during business hours and removed a MP3 player          |
Page 1

MICHELLE L. BABBITT, OFFICIAL COURT REPORTER, USDC -- (916) 442-8446

1    from its packaging valued at $298.97 and left the store
2    without paying for it.
3    The suspect fled in a waiting 1990's blue Ford,
4    California license number 3XGN144 driven by a dark-haired
5    female.
6    About a month earlier, the same male suspect entered
7    the same store during business hours and left the store
8    without paying for a digital camera and a Windows XP disk he
9    had concealed on his person. The suspect fled the store on
10   foot.
11   These two incidents were captured on the store's video
12   surveillance cameras. The officers started their
13   investigation, which they've treated as a burglary, about a
14   week later on November 30, '05. They traced the blue Ford
15   get-away car through DMV records to the last owner, Laura
16   Rocha, who told the officers that she had given the car to
17   her daughter.
18   When they showed her a photograph of the suspect in
19   the Target store burglary of November 23rd, Ms. Rocha
20   identified the suspect as her daughter's boyfriend, June. She
21   told the officers her daughter lived in an apartment complex
22   on Walnut Avenue, but didn't know the apartment number. The
23   officers were familiar with the area of this large apartment
24   complex and its location.
25   She also told Officer Cioli that June stayed with her

daughter, which the officer took it to mean June lived with the daughter. During her testimony at the evidentiary hearing, Ms. Rocha denied telling the officer that June lived with her daughter, which was literally true.

Officer Cioli testified that Ms. Rocha said June quote, stayed, unquote, with her daughter, which the officer took to mean he lived with the daughter.

In any event, Ms. Rocha's testimony in this particular, sounded contrived and lacked credibility. Her demeanor on the witness stand clearly showed bias in favor of defendant, at whom she constantly smiled and whom she acknowledged as she left the witness stand, this to a person who she indicated she hardly knew, who she said was in and out of the picture, and had only seen a few times.

To the extent the mother's testimony conflicted with Officer Cioli's testimony, I favor the officer's testimony, a veteran officer, now retired, and a trained observer. Also, his testimony jibes with the uncontested facts. There's no question but that defendant was living with his girlfriend in the apartment, which defendant himself now admits, and it is difficult to believe the mother didn't know this.

Officer Gillum testified that as part of the burglary investigation, he then contacted the manager of the apartment complex and determined that the daughter, Nicole Rocha, lived in apartment 206 with an unknown male. The manager was

1  unable to ID the suspect, identify the suspect when shown the
2  video surveillance photo of the burglary suspect, but said a
3  person fitting that description was staying with Ms. Rocha in
4  apartment 206.
5       At the evidentiary hearing, the manager, who appeared
6  very elderly and distraught, couldn't recall much and wasn't
7  asked much. He did say he was shown a photo and couldn't
8  identify that person as living in apartment 206.
9       The officers next decided to contact Nicole Rocha in
10 apartment 206. As they crossed the apartment complex parking lot    EJG
11 heading in the direction of apartment 206, they spotted a
12 male coming down the stairs from the area of the apartment,
13 who they recognized from the surveillance photo as the suspect   EJG
14 in their burglary investigation.
15      As they approached him, they identified themselves and
16 said they wanted to talk to him. The defendant testified at
17 the evidentiary hearing that he didn't immediately recognize
18 the officers as such and bounded up the stairs, taking them
19 two at a time towards apartment 206, which was on the second
20 floor.
21      The officers believed defendant was running from them
22 as defendant bounded up the stairs, taking the steps two at a
23 time, as defendant admitted in his testimony at the
24 evidentiary hearing. One of the officers headed defendant
25 off from a back stairway near the stop of the stairs to the

1  second floor, and defendant came down a few stairs and
2  submitted to the detention and allowed himself to be
3  handcuffed.

4  Defendant when asked, identified himself, and told the
5  officers he was on parole. They told defendant they wanted to
6  talk to him and suggested they go to his apartment to talk.

7  At this point, the officers knew their suspect was a
8  parolee and they also had probable cause to believe he
9  stayed, that is, lived in Department 206 and their entry to
10 the apartment through the unlocked apartment door to question
11 their suspect parolee complied with the, quote, relatively
12 stringent standards in determining what constitutes probable
13 cause that the residence belongs to a person, unquote, as set
14 forth in the U.S. v Howard case, Ninth Circuit case, cited by
15 the parties.

16 This is so, whether or not defendant told the officers
17 prior to their entry into the defendant's apartment, that he
18 lived there and whether or not defendant consented to the
19 entry.

20 Once inside the apartment, the defendant told the
21 officers his parole card was in his wallet, which officers
22 removed from defendant's pocket. Prior to any search of the
23 apartment, one of the officers made a security sweep of the
24 apartment for any other occupants which might present a
25 danger to the officers.

1     One of the officers then called defendant's parole
2  officer from the apartment using the phone number on
3  defendant's parole card. The parole officer confirmed the
4  defendant was on California parole and he lived in apartment
5  206. All of this was prior to the search which uncovered the
6  counterfeiting evidence sought to be depressed in this
7  motion.
8     Defendant also contends on the motion that the
9  officers did not have a reasonable suspicion that the loot
10 from the store burglary would be found in the apartment.
11    This contention is rejected for two reasons.
12    First of all, the U.S. Supreme Court in U.S. v Sampson on   EJG
13 June 19, 2006, held that a California parolee could be
14 searched not only without a reasonable suspicion, but for no
15 reason.
16    Second, the security sweep of the apartment disclosed
17 in plain sight evidence of a felony, which alone justified a
18 search of the parolee's residence without a search warrant.
19    The defendant's motion to suppress is therefore
20 denied.
21    Defendant's three objections to the warrantless search
22 of defendant's apartment are overruled:
23    One, because based on their investigation, the
24 officers had probable cause to believe defendant lived in
25 apartment 206 with his girlfriend.

1    Two, because the officers knew defendant was on parole
2    before they entered the apartment because he told them so.
3    Defendant admitted this in his testimony at the evidentiary
4    hearing.
5    And, three, because once they talked to defendant's
6    parole officer and confirmed that defendant lived in the
7    apartment and was on searchable parole, they needed no search
8    warrant to search the apartment.
9    I will direct the U.S. Attorney to prepare a summary
10   order of decision on the motion, and we will shift now to the
11   status conference.
12   How do you wish to proceed, Ms. Negin?
13   MS. NEGIN: Your Honor, I actually do have one
14   question for the Court about the factual findings. I'm not
15   sure -- I'd like to ask with respect to Detective Gillum's
16   testimony if the Court found with respect to Detective
17   Gillum's testimony that was consistent with Ms. Rocha, that
18   she never told the detectives that Mr. Nazareno stayed or
19   lived there, if the Court found Gillum's testimony
20   contradictory to Cioli's testimony and whether the Court then
21   favored Cioli's testimony over Gillum's testimony?
22   THE COURT: I didn't have to do that under the
23   circumstances that I've already read into the record.
24   What do you want to do about the status conference?
25   MS. NEGIN: I want two weeks from today, if the Court

```
 1  is available, on the 14th.
 2          THE CLERK:  July 21st.
 3          MS. NEGIN:  That's fine.
 4          THE COURT:  July 21st?
 5          MS. NEGIN:  Yes, Your Honor.
 6          THE COURT:  '06 at ten a.m.
 7          MS. RODRIGUEZ:  No objection to the date, provided
 8  defense counsel agrees to a continuance for preparation of
 9  counsel.
10          MS. NEGIN:  We do, Your Honor.
11          What's happening, I've already spoken to Ms. Skipper
12  about the potential of being able to resolve the case. We
13  need time to prepare that. We would be doing that by way of
14  conditional plea, and we're in discussions about that and
15  doing further preparation.
16          So it would be appropriate for a T4 exclusion.
17          THE COURT:  The Court will find excludable time
18  pursuant to local code T4 at the request of counsel, and put
19  the status conference over to July 21, '06 at ten a.m.
20          Thank you, counsel.
21                              (Whereupon, proceedings
22                               concluded at 12:19 p.m.)
23
24                      ---oOo---
25
```

```
 1
 2                            ---oOo---
 3
 4          I certify that the foregoing is a correct transcript
 5   from the record of proceedings in the above-entitled matter.
 6
 7
 8                          [signature]
 9                   MICHELLE L. BABBITT, CSR 6357
10
```